May it please the court, Randolph Gah and Sandy Salonky, with Bill Melvaney and Myers, counsel for Appellant Todd Asker. Your Honors, at this time, I would like to reserve two minutes for rebuttal, which will be argued by Mr. Salonky. Your Honors, the District Court erred in granting qualified immunity for Defendant McGrath. And for today's argument, I would like to focus on three issues in particular. First, the record shows that Mr. McGrath's categorical ban on hardcover books was arbitrary and did not serve a legitimate penological purpose. Second. Is that even contested by the State on appeal? Your Honor, the State has not contested the District Court's declaratory judgment on this issue. However, the State did raise an argument with respect to the first prong of the qualified immunity test, that the right could have been, that there may not have been a constitutional right violated. But if they didn't take an appeal on that question, do they even really have standing to question it here? We would not argue with that point, Your Honor. If we have to go to the first step of saucier in determining whether your clients are entitled to judgment, then that would require us to reverse the district judge on that point, wouldn't it? It might, Your Honor. Okay. Second, there is multiple authority, ignored by the District Court, clearly establishing that categorical bans of nonobjectional reading material are unlawful. And third, Mr. McGrath's actions were not reasonable. Are there any other cases dealing with hardcover rules, rules for hardcover books? Yes, Your Honor. The Seventh Circuit has twice decided this issue on hardcover books. In the 1982 case of Kincaid v. Rusk and the 1989 case of Jackson v. Elrod, there, the Seventh Circuit held that prison bans on hardcover books were unconstitutional. Furthermore, there have been other district court opinions dealing with blanket bans of books in general. And this Court, while not directly ruling on hardcover books, has held that arbitrary bans, on nonobjectional reading materials, are unlawful. Now, that's a pretty broad principle. So is there anything in our circuit or anything in the Supreme Court that suggests that prison officials must permit hardcover books as long as the covers are removed and that to do otherwise would violate the Constitution? Your Honor, with respect to your first point, the Supreme Court has held in Anderson v. Creighton, and this Court has followed that rule, that it's not necessary to have prior cases be on point in order to establish that a law is clearly established for qualified immunity purposes. Rather, it is sufficient if the contours of the right in question have been shaped. And we submit that this Court's cases of, for example, the 1999 case of Crofton v. Roe and the 2003 case of Asher v. California Department of Corrections has established the contours of this right in question, because in those cases, this Court has struck down arbitrary and categorical bans of nonobjectional reading material, which is what we had here today. And therefore, given the clearly established law — The trouble with your argument, counsel, as far as I can see, is that in Bell v. Wolfish, we have the Supreme Court telling us that it understands why we're going to have a publisher-only rule, and we have acknowledgement in other cases that hardcover books may be a way of disguising contraband. And so it appears that the State is well within its reasons to ban hardcovers. Now, whether it has to — whether it must constitutionally take the second step of allowing hardcover books that have had the hardcover stripped from them looks like a question that hasn't been fully resolved either by the Supreme Court or in this circuit. Well, actually, Judge Bybee, the Supreme Court in Bell v. Wolfish, what it did was it upheld a prisoner's right to receive hardcover books. It merely — it merely said that a security precaution, that is that the book must come through an approved publisher, was a reasonable — was a reasonable restriction given that, you're correct, hardcover books could be used as contraband in certain circumstances. However, in this case here, Mr. McGrath has admitted that the policy, the prior policy that was in place for 10 years of simply removing the covers off hardcover books was completely effective at mitigating any contraband concerns. And then here, abruptly, he simply changes the policy for no reason and begins banning all hardcover books instead. The Supreme Court said in turn, and has long been the jurisprudence, that the First Amendment rights of prisoners are not curtailed. They can only be reasonably restricted under certain circumstances. Namely, there must be a rational connection to a legitimate penological objective. Here, Mr. McGrath's policy was completely arbitrary as found by the district court. There was no rational basis for it. It was clearly established that what Mr. McGrath was doing was unconstitutional. In particular, given the history of this ban and the context in which it took place, the district court erred in finding that Mr. McGrath could have reasonably believed that his ban would pass constitutional muster.  In addition to the fact that Mr. McGrath's policy was unconstitutional, it's important to note that the district court, Pelican Bay, already had an effective policy for 10 years, which abruptly was changed for no reason by Mr. McGrath. It is important to note that he has never articulated a reason as to why he suddenly felt the need to reverse 10 years of policy. Well, that is true, Your Honor. He did articulate that one reason for his new ban was to – was regarding the durability of the books. Now, regarding the durability of books in question, the idea that it is a – that the best way to prevent books from falling apart was to not allow people to have them at all is somewhat nonsensical. It certainly doesn't respect the First Amendment rights of prisoners. But moreover, Mr. McGrath never submitted any evidence disputing the multiple declarations submitted by Pelican Bay inmates showing that books without their covers remained in perfectly good condition for over 10 years. Now, it also – we also must keep in mind that Mr. McGrath reversed his reversed policy two years later. He restored the prior policy of simply allowing books with the covers removed. I believe this is a clear indication that he knew that his policy was unlawful. Well, I don't know why that would be an indication that he knew that his policy was unlawful. I don't know why he would want to confess error, subject himself to damages, if that's what it meant. That's usually why we have rules in torts, for example, that forbid changes in roads, improvements to bridges after an accident occurs from being introduced to show the liability on the part of the municipality. That is correct, Your Honor. If we were to impose – if we were to impose damages based on that change in policy, we can bet that the next time that the wards will be very, very reluctant to change any policy, lest, you know, very capable young lawyers come in and tell them that they're now going to owe prisoners out of their own pockets for all the – for the changes they've made. That is correct, Your Honor. I certainly do not mean to suggest that there should be a per se rule that a change in policy admits some sort of liability beforehand. I'm merely saying that the context and the history behind this policy, the fact that there was an effective policy for 10 years, that it was changed for no reason, and then it was changed back, show that the actions were not reasonable. And if there are no further questions at this time, I'll reserve my time for rebuttal. Thank you. Good morning. Thank you, Mr. Gaul. Good morning. May it please the Court, my name is Catherine Wheeler. I represent the appellee, Mr. Joseph McGrath, former warden of Pelican Bay State Prison. This case is about a restriction on hardcover books, not a blanket ban. It's also about a warden working under the reasonable belief that the restriction was lawful. Pelican Bay's policy, in practice, was to allow hardcover books when inmates showed a compelling need for them. For example, educational books were allowed, and books not otherwise available in softcover formats could be allowed upon an inmate's request for the same. The rationale for the policy in question was to prevent contraband and promote security. The appellant has improperly focused on Mr. McGrath's statements in his responses to inmate 602 appeals that the application of the hardcover regulation was implemented due to concerns about ruining the books or the integrity of the books. Well, even if we did, I don't think there's any doubt that the concern about books with contraband, but the practice, again, is to cover loss of books. Was there any evidence that that still left contraband problems? Well, when you look at Mr. McGrath's 602 appeal responses in the excerpts of record at 114 and 155, you see that what he is explaining the rationale to be is, look, we have these books, and certainly removing the covers does remove that basic problem. However, there are then complaints by inmates, and it creates additional problems for the administration of the policy. And what Mr. McGrath was working under would have been Turner v. Safely, which says, you don't have to do the least restrictive means possible when you have a legitimate penological objective, and that objective here was security when it became an additional problem to add the to take off the books, and prisoners did complain about that, and although the inmates say that they were, that the integrity of some of the books was maintained with the covers removed, even Mr. Troxell, who was a plaintiff in the underlying case, admitted that he had seen other inmates' books destroyed and complaints had arisen from that. So when you look at his responses, he tells the prisoners how to obtain those books, and that's when we get into the Turner analysis. It didn't have to be the least restrictive means. The clearly established law shows that Mr. McGrath, when we're looking at a qualified immunity objective, Mr. McGrath could have reasonably believed that, even if mistakenly, that because there was a rational basis for the policy, the security and contraband concerns, because the law did not require him to apply the least restrictive means to enforce it, and because enforcing a broader policy negatively impacted prison resources, that he was acting lawfully. These prisoners still had the ability to obtain softcover books, of which Mr. McGrath believed there were millions and that the hardcover book policy would not impact them in a negative way. These inmates had the ability to ask. Mr. McGrath, in his responses to the 602 appeals in the last few sentences, said, basically gave the prisoners the instruction as to how to get these hardcover books with covers removed. Inmates, show me you can't get these books in another form. And in this case, Mr. Ashker never said in his 602 appeals, I cannot otherwise obtain this book. This book is not available in softcover. Instead, he merely focused on wanting the book with its cover removed. And because he did not present any other reason, the prison's policy was no hardcover books. He didn't present a reason for them to make an exception for him. As well as the prisoner. Your brief said that you thought he waived his right to appeal. Do you still think that? It's definitely arguable that Mr. Ashker has waived his rights to damages based on the stipulation. There were, after the hearing, parties entered into discussions for resolution of damages, and that stipulation came out of it. As you can see from the transcript of the hearing on the motion for summary judgment. It's got some kind of broad language in it. But, you know, we start with this stipulation, and the title of it is stipulation and order regarding attorney's fees. It certainly looks like it was really intended only to waive any further claim for fees. And I thought that was kind of surprising until I thought about it. And the real expense for the declaratory judgment action was the attorney's fees. And possibly with the rest of the action. And waive fees for the policy. Correct. I think that you can move past the stipulation. And the more important part of this case is that really it's an academic point at most right now. The policy was changed in 2005. And as appellant's counsel has pointed out, the policy did change. But the policy didn't change as a demand of Warden McGrath. It was a statewide policy change, as the district attorney general noted in his argument to the district court on the hearing for summary judgment. So this wasn't a policy, this wasn't Mr. McGrath implementing some policy and deciding that it didn't work and then implementing another policy. This was a change that the statewide was the one going back to allowing it. Was allowing it as soft cover, correct, within the other guidelines that the prisons had. And the same question I posed to opposing counsel. At this point, the state is not contesting step one of saucier. That is, you are not contesting that the ban on hard covers was constitutional, the district court was in error. Well, actually, as briefed, we do believe that the policy was constitutional. That it did meet the Turner versus Safely test. And that case law supports finding it constitutional. It's not at a point appealed by the appellant, of course. And it's not something that we cross appealed on. In light of the Supreme Court's recent opinion in Callahan versus Pearson, is there any reason for us to reach that question? No, Your Honor, there's not. I think that that case shows that if you chose not to address the constitutionality, you could still determine that Mr. McGrath is entitled to qualified immunity, that he did not have notice of laws that would have put him, that he did not know about laws. There was no law on point in the Ninth Circuit or of the Supreme Court that would have put him on notice to understand that this policy could be deemed unconstitutional. Is the – is Warden McGrath or the State Attorney General responsible for knowing the content of the Seventh Circuit's opinions? Mr. McGrath is not, no. I would hope that the Attorney General would have a broader understanding of the law. But, no, Mr. McGrath is not responsible. He is responsible for knowing the state of the law as it applies to his jurisdiction. And many of the cases cited by the appellants are district court opinions in other circuits. They're unpublished. We don't hold our prison officials or reasonable prison officials to be learned in, you know, jurisdictional differences or what legal trends might be emerging from remote jurisdictions. What we need to evaluate the qualified immunity of Mr. McGrath is, could a reasonable prison official in his position have thought that this policy was a constitutional policy? And the case law in the Ninth Circuit and in the United States Supreme Court would not have put him on notice that this policy was unconstitutional. For example, in talking about Bell, Bell did not establish an absolute right to hardcover books. Just because it upheld the constitutionality of that particular application of hardcover books, it did not establish an absolute right to hardcover books. So it could not have put Mr. McGrath on notice that anything that he was doing was unlawful. In conclusion, Mr. McGrath knew the policy was flexible. He explained the justification was for contraband and security reasons. Although he knew the security concerns could be alleviated, he also would have known that the law does not require the least restrictive means to accomplish a legitimate In conclusion, Mr. McGrath is entitled to qualified immunity and cannot be held liable in this case. Thank you. Thank you, Ms. Wheeler. Good morning, Your Honor. Mr. Solanki for Appellant Todd Escher. I'm sorry. Your name is not on our list, so would you just spell it for us for the record? Sure. It's Solanki. S-o-l-a-n-k-i. Thank you, Mr. Solanki. Thank you. Your Honors, I'd like to just make a few brief points. First, on the issue of compelling need exception, I think it's clear from the record that that exception did not actually exist. It was something that Mr. McGrath is making up here. The actual policy, which is an excerpt of Record 31, merely says all hardcover books are banned except for certain educational books and previously owned hardcover books. But in his appeal, his appeal decision, the warden told him that if there was a good reason that he would listen to it. Correct. And certainly that, but that wasn't the policy that's being challenged here. The warden, if that's the warden's policy, he should have put that in the actual OP806. And there's also no basis in the California regulation. On the other hand, he demonstrated some flexibility with respect to your client. I don't know how we can then fault him for having shown some additional flexibility. Sure. Well, at least our position is that if there was flexibility, that shows that the policy itself was unreasonable from the start. Warden McGrath, if he wanted to implement a constitutional policy, he should have not banned all books and then started to backtrack from that and said, okay, maybe I should allow educational books, maybe I should allow books that are not available in softcover. And also there needs to be a legitimate penological interest for the exceptions here, saying that if a book is not available in softcover format, that that somehow creates a compelling need doesn't seem logical. Why do books that are available only in hardcover format somehow make an exception? If the warden is concerned about contraband risk, then he should be concerned about that. But to make an exception for all sorts of other books doesn't seem reasonable here. Counsel, in light of the Supreme Court's recent decision in Callahan v. Pearson, is there any reason for us to decide step one of the saucier? No, we don't believe so. We believe under saucier or Pearson, the courts still reverse qualified immunity in either instance. The only other point I wanted to make is the durability interest, that may be a concern that Mr. McGrath had, but that has to be rationally related to a legitimate penological interest. There's no, as the district court found, there's no legitimate penological interest in the durability of books. There's no reason that a prison should be concerned about that. There's no security interest involved in there. Okay. Thank you, Your Honor. To Mr. Gau and Mr. Solanke, thank you both for your participation in the court's pro bono. We appreciate you doing that. Thank you. We thank all counsel for the argument. Asher is submitted.
judges: Canby, Gould, Bybee